## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:22-cr-00167-SEP-1 |
| | ) | |
| MERWIN SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The Court referred this matter to United States Magistrate Judge Shirley Padmore Mensah for a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b).  On November 30, 2023, Judge Mensah filed her Report and Recommendation (R&R), Doc. [68], recommending that Defendant's Motion to Suppress Evidence, Doc. [39], be denied.

Defendant objects to Judge Mensah's recommendation that the Court deny his Motion to Suppress Evidence.  Doc. [69].  The Court reviews *de novo* those portions of the R&R to which objection is made.  *Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990).  The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court has conducted a *de novo* review of all matters relating to Defendant's Motion to Suppress Evidence and objections to the R&R, including a thorough review of the transcript of the evidentiary hearing held in front of Judge Mensah and all exhibits introduced both during and after the hearing, as well as the parties' briefing both before and after the hearing and in response to the R&R.  *See* Docs. [39], [43], [49], [50], [54], [62], [64], [66], [69], [72].  Because Defendant's objections implicate one witness's manner of testifying, the Court also listened carefully to the audio recording of that witness's testimony at the evidentiary hearing.  After careful deliberation, the undersigned will adopt and sustain Judge Mensah's thorough and well-considered Report and Recommendation in its entirety and deny Defendant's Motion to Suppress Evidence.

Defendant maintains that Judge Mensah's R&R is defective in several respects.  Most fundamentally, he maintains that Judge Mensah made a mistake in finding Detective Martinous Walls's testimony credible.  *See* Doc. [69] at 2-3.  Having reviewed Detective Walls's testimony

both on paper and by audio recording, the undersigned agrees with Judge Mensah that "[t]here was nothing about Detective Walls's demeanor . . . that appeared to be intentionally misleading, evasive, or suggestive of an attempt to be less than candid with the Court."  Doc. [68] at 4-5.  In particular, the Court rejects Defendant's argument that Detective Walls's manner was "evasive," in that he provided "short, terse answers after agonizingly long pauses."  Doc. [54] at 14; Doc. [69] at 2 & n.4.  Providing concise answers is not inherently suspicious, especially for someone who is familiar with the process of providing testimony in court.  Nor is taking a beat to consider one's response to a question asked under oath in front of a judge.  And the undersigned heard no pause of even unusual, never mind "agonizing," length.  Therefore, Defendant's objection to Judge Mensah's assessment of Detective Walls's manner of testifying is overruled.[1]

Defendant also objects that Judge Mensah's credibility finding was mistaken because Detective Walls's testimony was "self-contradictory," and he "couldn't get his story straight." Doc. [69] at 2.  That objection was fully briefed before Judge Mensah, *see* Doc. [54] at 14-16, who conceded in the R&R that it was "difficult to determine the exact sequence of events leading to Detective Walls' identification of 716 Baden as a suspected drug house," because "Detective Walls did not testify in a narrative or chronological manner."  Doc. [68] at 4.  Judge Mensah nevertheless "found Detective Walls to be a credible witness and g[a]ve full credit to his testimony except as specifically noted."  Doc. [68] at 5.  Defendant's objections to the R&R do not identify any internal inconsistency in Detective Walls's testimony that Judge Mensah's R&R failed to properly consider; Defendant just cites Walls's alleged inconsistency in support of the objection to Judge Mensah's credibility finding.  The Court overrules that objection to the R&R, finding Detective Walls's testimony to be generally credible for the reasons the R&R well articulates.  *See* Doc. [68] at 2-5.  Also overruled, for the same reasons, are Defendant's objections to the conclusions Judge Mensah reached in reliance on Detective Walls's testimony. *See* Doc. [69] at 3-4, 8.

Defendant also objects to Judge Mensah's evaluation of Defendant's investigator's testimony.  *See* Doc. [69] at 4-7.  On *de novo* review of the record, including the transcript of the evidentiary hearing and all exhibits, the undersigned concurs with Judge Mensah's analysis of

---

[1] Because Defendant's complaints about Detective Walls's manner were audible (i.e., terse answers and long pauses), and the Court was able to listen to an audio recording of the hearing, the Court does not find it necessary to recall Detective Walls to evaluate his manner anew.  *See* Doc. [69] at 2.

that evidence:  Inspector Herndon was a credible witness, but the evidence he presented was not especially probative of what Defendant offered it to prove—i.e., that Detective Walls could not see what he claimed to have seen on the day of Smith's arrest.  No direct connection or comparison was ever drawn, at the hearing or otherwise, between what Investigator Herndon photographed and what Detective Walls could see when he was surveilling the 700 block of Baden Street.  *See* Doc. [68] at 6-7 (noting that Detective Walls was never asked to comment about the photos or videos taken by Herndon, either before or after the hearing, and that all of Herndon's photographs were taken more than a year after Smith's arrest and under conditions that no one claimed were comparable to the conditions on that date).

Although Herndon visited the site again post-hearing purportedly to document what Detective Walls could have seen from the stake-out location Walls identified on a map at the hearing, the images alone do not prove that Walls was lying, as Defendant suggests.  In order to draw that conclusion, the Court would have to assume not only that the relevant features of the scene (e.g., vegetation, fencing, buildings) were sufficiently similar in March 2022 and August 2023, but also a number of even more contestable premises, for example:  that Walls was able to indicate his position on March 9, 2022, on an aerial image presented to him at a hearing more than a year later with sufficient accuracy and precision for someone to recreate the exact position of his car without any further elaboration (i.e., without knowing, for example, whether he was placing the dot where the rear of his car was located or the front, what landmarks or signposts he recalled, how accurate he felt he could be, etc.); that Herndon was able to interpret and apply Walls's minimal testimony with equal accuracy and precision; and that the most reasonable inference from any disparity between where Walls placed the dot on the aerial image in August 2023 and another position nearby from which he might have been able to see what he claims he saw in March 2022 is that Walls fabricated the testimony about what he saw—not that he misremembered or misdescribed the location of the car.  Defendant was free to provide evidence or try to elicit testimony to support any of those premises, but he did not.[2]  He did, however, submit a video demonstrating that the back doors of 718 and 716 Baden can be seen from the

---

[2] Judge Mensah gave Defendant the opportunity to reopen the evidentiary hearing and recall Detective Walls, but Defendant declined.  *See* Doc. [50].

parking lot in which Detective Walls was positioned.  *See* Def. Ex. J.[3]  Thus, based on the exhibits submitted by Defendant and the hearing testimony, Judge Mensah was right to "give little weight to Investigator Herndon's hearing testimony and give little weight to the photographs and video taken before and after the evidentiary hearing." Doc. [68] at 7.[4]  And Defendant's objections to Judge Mensah's findings based on her evaluation of Herndon's evidence are overruled on the same grounds.  *See* Doc. [68] at 6.

Defendant's objections to Judge Mensah's treatment of the confidential informant (CI) likewise fail.  *See* Doc. [69] at 7.  Cases cited by the Defendant himself acknowledge that a "confidential informant's tip may support a reasonable suspicion if it has sufficient indicia of reliability, such as the informant's track record as a reliable source or independent corroboration of the tip."  *United States v. Manes*, 603 F.3d 451, 456 (8th Cir. 2010) (internal citation omitted) (citing *United States v. Hill*, 91 F.3d 1064, 1069 (8th Cir. 1996); *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)).  Here, Detective Walls testified that the CI had provided reliable information in the past and that he independently corroborated the CI's information through visual surveillance.  *See* Doc. [49] at 9-12.  Defendant cites no case in his briefing before Judge Mensah or in response to the R&R that isn't readily distinguishable from this one.  For example, in *United States v. Oliver*, a court refused to rely on an informant for reasonable suspicion where there was no evidence of the informant's past reliability and there were no "verifiable details to

---

[3] Defendant's objection to Judge Mensah's citation of Exhibit J as corroboration for Detective Walls's testimony, *see* Doc. [69] at 5, is overruled.  The video shows that the back doors of 716 and 718 Baden *were* visible from the parking lot from which Detective Walls surveilled the block, and—contrary to Defendant's characterization—it was not shot exclusively from a position perpendicular to the alley.  In fact, the beginning of the video appears to have been taken from the end of the alley, not far from where Detective Walls claims to have been parked, and the back doors of 716 and 718 Baden are more visible from that vantage point than from any other depicted.  Thus, Exhibit J does lend support to Detective Walls's claims to have seen Defendant and others enter the back door to 716 Baden from his vantage point in the parking lot.  The video is not incontrovertible proof that Detective Walls could see those doors any more than Investigator Herndon's photographs are incontrovertible proof that he couldn't, for the same reason:  No one has provided testimony or evidence sufficient for the Court to definitively determine Detective Walls's position or what could be seen from it on March 9, 2022.  But a video showing that the doors were visible from a place very near where he claims to have been positioned does provide support for Walls's claims.

[4] A site visit would not remedy the weakness of this evidence.  Defendant has well documented the features of the site at various times.  A site visit would shed no light on the relationship between those images and the condition of the site in March 2022.  Nor would it illuminate any apparent discrepancy between where Walls claims to have been parked and a vantage point from which the back doors of the houses are visible.  Those issues could have been addressed in court based on Investigator Herndon's images, and Defendant elected not to address them.  A site visit would not cure that omission.

test the informant's knowledge."  2012 WL 2601948, at *7 (W.D. Ky. July 5, 2012).  Both of those indicia of reliability are present in this case.  Defendant's objection to reliance on the confidential informant is overruled.

Defendant's objection to the Court's application of the mistake-of-fact doctrine also lacks merit.  Doc. [69] at 8-13.  Under the mistake-of-fact doctrine, "reasonable suspicion of criminal activity can be based upon a mistake of fact so long as that mistake was objectively reasonable." *Williams v. Decker*, 767 F.3d 734, 740 (8th Cir. 2014).  To the extent that it was even necessary to support the outcome, Judge Mensah properly applied the doctrine in the R&R.  The only evidence that Defendant stopped at 718 Baden and not 716 Baden is Defendant's unsworn statement to his own counsel.  Detective Walls's sworn testimony that Defendant stopped at 716 Baden is more credible than Investigator Herndon's report of a self-serving unsworn claim of the Defendant.  But, as Judge Mensah explained, "even if Detective Walls was mistaken," the mistake would be objectively reasonable.  Doc. [68] at 12.  The Government has sufficiently substantiated Detective Walls's suspicions about 716 Baden, and the Court agrees with Judge Mensah's determination, based on the relevant evidence, that it would have been reasonable for Detective Walls to mistake 716 and 718 Baden.  *See id.*[5]

And finally, the Court agrees with Judge Mensah's analysis and conclusion that "Detective Walls had a particularized suspicion that criminal activity was afoot when he directed officers to conduct a traffic stop of the Buick in which Smith was a passenger."  *Id*. at 9.  That particularized suspicion was based on information provided by a known, reliable informant; Detective Walls's own investigation based on the information provided; and Detective Walls's observation of the car in which Defendant was a passenger and Defendant's own conduct.  Specifically, Detective Walls observed both the car and Defendant himself engaging in patterns of behavior that—based on both the CI's information and Walls's experience—were consistent with engaging in a drug transaction.  *See id.* at 9-10.  The Eighth Circuit has held that similar circumstances give rise to particularized suspicion that a defendant just purchased drugs.  *See, e.g.*, *United States v. Pounds*, 70 F.4th 1106, 1108 (8th Cir. 2023) (police had reasonable suspicion to

---

[5] Defendant's authorities to the contrary are nonbinding and unpersuasive. *See United States v. Longoria*, 183 F. Supp. 3d 1164, 1182 (N.D. Fla. 2016) (an officer's mistake of fact about whether a car's rear windows were illegally tinted was unreasonable); *United States v. Jenkins*, 2016 WL 11774520, at *4 (N.D. Cal. Dec. 27, 2016) (a mistake of fact was unreasonable when the mistake was undisputed and the officer "provided no detail in his testimony that would support the reasonableness of his belief").

stop a vehicle that had just made a six minute stop at a known drug house); *United States v. Collins*, 883 F.3d 1029, 1033 (8th Cir. 2018) ("The [O]fficers were entitled to rely on their experience to conclude that the heavy traffic they observed, consisting largely of brief visits in the late evening and early morning hours, was consistent with drug trafficking."); *United States v. Piedra*, 170 F. App'x 19 (8th Cir. 2006) (reasonable suspicion existed to stop a vehicle leaving a house where a controlled drug purchase was in progress and police knew Defendant had visited a residence where a different drug purchase had occurred 11 days earlier); *United States v. Buchannon*, 878 F.2d 1065, 1067 (8th Cir. 1989) (police has probable cause to stop a previously unknown individual because a "visit to the house, carrying a bag and departing a short time later, conformed to the patterns of the drug trade"). Defendant accurately points out some of the differences in the circumstances of his arrest and the cases cited in the R&R.  *See* Doc. [69] at 1.  In some of the cited cases—*Pounds* and *Collins*, for example—officers had more evidence that the surveilled house was a "drug house" than Detective Walls had in this case.  But the fact that officers had "abundant," *Pounds*, 70 F.4th at 1108, or "ample," *Collins*, 883 F.3d at 1033, evidence in other cases does not make that the threshold for establishing reasonable suspicion.[6]  Reasonable suspicion requires only that an officer point to "specific reasonable inferences which he is entitled to draw from the facts in light of his experience."  *Terry v. Ohio*, 392 U.S. 1, 27 (1968).  Although this is a closer case, for the reasons noted above, Detective Walls's suspicion was still reasonable.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge Shirley Padmore Mensah, Doc. [68], filed November 30, 2023, be and hereby is **SUSTAINED**, **ADOPTED**, and **INCORPORATED** herein.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence, Doc. [39], is **DENIED**.

A jury trial in this matter is set for **March 18, 2024, at 9 a.m.,** in the courtroom of the undersigned.

Dated this 9th day of February, 2024.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

---

[6] Defendant also argues that *United States v. Crawford*, 891 F.2d 680 (8th Cir. 1989), should control, rather than the cases cited in the R&R.  For the reasons set out in the United States' Response in Opposition to Defendant's Motion to Suppress, Doc. [43] at 7-10, it does not.